UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SEP 30 2022 PM 1:34
FILED-USDC-CT-HARTFORD

GEORGE C.,                    :
                              :
     plaintiff,               :
                              :
     v.                       :   CASE NO. 3:20-cv-1915(RAR)
                              :
KILOLO KIJAKAZI,              :
ACTING COMMISSIONER OF        :
SOCIAL SECURITY,              :
                              :
     defendant.               :

## RULING ON PENDING MOTIONS

George C. ("plaintiff") appeals the final decision of the
Commissioner of Social Security ("the Commissioner") pursuant to
42 U.S.C. § 405(g). The Commissioner denied plaintiff's
application for Social Security Disability Benefits in a
decision dated October 28, 2019. Plaintiff timely appealed to
this Court. Currently pending are plaintiff's motion for an
order reversing and remanding his case for a hearing (Dkt. # 16-
1) and defendant's motion to affirm the decision of the
Commissioner. (Dkt. #21-1.)

For the reasons that follow, plaintiff's motion to reverse,
or in the alternative, remand is DENIED and the Commissioner's
motion to affirm is GRANTED.

1

**STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record."  Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[2]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on January 9, 2018. (R. 15.)[3] Plaintiff alleged a disability onset date of June 30, 2016. (R. 15.) The application was denied on August 27, 2018, and again upon reconsideration on October 15, 2018. (R. 15.) Plaintiff then filed for an administrative hearing, which was held by ALJ I.K. Harrington (hereinafter "the ALJ") on October 2, 2019. (R. 29–62.) The ALJ issued an unfavorable decision on October 28, 2019. (R. 15–28.) Plaintiff filed a request for review with the Appeals Council on December 20, 2019. (R. 181–83.) The Appeals Council denied plaintiff's request for review on October

---

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[3] The Court cites pages within the administrative record as "R. ___."

4

28, 2020.  (R. 1-4.)  Plaintiff then filed this action seeking
judicial review.  (Dkt. #1-1.)

The Court notes that plaintiff filed a "Statement of
Material Facts" on June 22, 2021. (Dkt. #16-2.)  While
agreeing in significant part with the facts, the
Commissioner filed a responsive statement of facts along
with its motion to affirm the decision of the Commissioner.
(Dkt. #21-2.) The Court has fully reviewed and generally
adopts the facts as set forth by plaintiff and supplemented
by the Commissioner. While utilizing these facts, the Court
will further supplement throughout the discussion as
necessary.

## DISCUSSION

Plaintiff argues that the ALJ erred in three ways.  First,
that the ALJ erred in failing to properly apply SSR 83-20. (Dkt.
#16-1 at 4-7.)   Second, that the ALJ erred in failing to assign
plaintiff an RFC. (Dkt. #16-1 at 7-8.)   Finally, that the ALJ
erred in the application of 416.920c to the opinion of Dr.
Cambridge.  (Dkt. #16-1 at 8-9.)  Based on the following, the
Court DENIES plaintiff's motion for reversal or remand.  The
Court notes that plaintiff has filed a statement of material
facts along with his motion, to which the Commissioner has filed
a response.  (Dkt. #16-2 and #21-2.)  The Court will rely on the

facts as contained in those filings and will supplement as
needed in the ruling.

The Court does, however, wish to highlight the ALJ's
opinion, written on October 28, 2019, as the arguments made by
plaintiff implicate an analysis of the ALJ's findings and
procedure.  (R. 15-23.)  At step one of the sequential
evaluation process the ALJ determined that the plaintiff "did
not engage in substantial gainful activity during the period
from his alleged onset date of June 30, 2016 through his date
last insured of June 30, 2016." (R. 17.)  The ALJ then moved to
step two of the process and determined that the plaintiff
suffered from a number of medically determinable impairments.
Specifically, osteoarthritis, degenerative disc disease,
obesity, obstructive sleep apnea, hypertension, and Lyme
disease. (R. 17.)  However, the ALJ concluded that "through the
date last insured, the [plaintiff] did not have an impairment or
combination of impairments that significantly limited the
ability to perform basic work-related activities for 12
consecutive months; therefore, the [plaintiff] did not have a
sever impairment or combination of impairments." (R. 19.)

In reaching the conclusion that the plaintiff did not
suffer from any severe impairments the ALJ undertook a two-step
process.  First, the ALJ "determined whether there [wa]s an
underlying medically determinable physical [] impairment" that

was evidenced by "medically acceptable clinical or laboratory
diagnostic techniques – that could reasonably be expected to
produce the [plaintiff's] pain or other symptoms." (R. 19.)
Once a medically determinable impairment is found, the ALJ "must
evaluate the intensity, persistence, and limiting effects of the
[plaintiff's] symptoms to determine the extent to which they
limit the [plaintiff's] functional limitations." (R. 19.)

     In this case the ALJ noted that "evidence of an impairment
which came into existence or reached disabling severity after
the expiration of the claimant's insured status cannot be the
basis for a finding of disability." (R. 19-20)(quoting SSR 74-
8c). This meant that plaintiff must show a disabling impairment
existed before his date last insured, June 30, 2016. The ALJ
established that in this case the alleged "intensity,
persistence and limiting effects of the impairments were not
consistent with the medical evidence and other evidence in the
record." (R. 20.) The ALJ then evaluated the medical evidence
contained in the record.

     The Court highlights that the ALJ ended the five-step
evaluation process at step two. "A claimant has the burden of
establishing that []he has a 'severe impairment,' which is 'any
impairment or combination of impairments which significantly
limits [his] physical or mental ability to do basic work.'"
Woodmancy v. Colvin, 577 Fed. Appx. 72, 74 (2d Cir.

2014)(quoting 20 C.F.R. § 416.920(c)) (alterations in original).
A mere diagnosis of a disease or impairment is insufficient, the
evidence must demonstrate that such impairment is severe.  See
Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. 2008).

    A severe impairment is "any impairment or combination of
impairments which significantly limits [a plaintiff's] physical
or mental ability to do basic work activities."  20 C.F.R. §
416.920(c).  A severe impairment must meet the durational
requirement, such that the impairment must be "expected to
result in death, [or] it must have lasted or must be expected to
last for a continuous period of at least 12 months."  20 C.F.R.
§ 416.909.

    A claimant seeking social security benefits bears the
burden of showing that he has a medically severe impairment or
combination of impairments.  See Bowen v. Yuckert, 482 U.S. 137,
146 n.5 (1987).  "The severity regulation requires the claimant
to show that he has an 'impairment or combination of impairments
which significantly limits' 'the abilities and aptitudes
necessary to do most jobs.'"  Id. at 146 (quoting 20 C.F.R. §§
404.1520(c), 404.1521(b)).  Plaintiff must provide "medical
evidence which demonstrates the severity of her condition."
Merancy v. Astrue, No. 3:10-cv-1982(WIG), 2012 WL 3727262, at *7
(D. Conn. May 3, 2012).

"A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Eusepi v. Colvin, 595 Fed. Appx. 7, 8 (2d Cir. 2014) (citing Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

I.   **The ALJ did not err in failing to apply SSR 83-10.**

First, plaintiff asserts that the ALJ erred by not properly applying SSR 83-20 to this case. (Dkt. #16-1 at 4.)  In response, the Commissioner asserts that SSR 83-20 is not applicable because it was rescinded and replaced. Alternatively, even if SSR 83-20 applies, the Commissioner argues that there was no need to infer an earlier onset date because the ALJ did not find plaintiff to be disabled at any time prior to the date last insured. (Dkt. #21-1 at 11-13.)  In other words, the Commissioner argues that by finding that plaintiff was not disabled before the date last insured, there was no need for the ALJ to establish an onset date and thus, even if SSR 83-20 was still in effect, it would not have covered the situation.

The Court has reviewed SSR 83-20, and its replacement SSR 18-1p, and has concluded that SSR 83-20 is not applicable to the case at bar.  SSR 83-20 was rescinded and replaced on October 2, 2018.  Titles II & XVI: Onset of Disability, SSR 83-20 (1983). While plaintiff asserts that "SSR 83-10 remains applicable to

9

claims filed prior to October 2, 2018," this assertion is
incorrect. (Dkt. #16-1 at 4.)  SSR 18-1p provides that it will
be used starting on October 2, 2018 and it will apply to "new
applications filed on or after the applicable date of the SSR
and to claims that are pending on and after the applicable
date." SSR 18-01P, 2018 WL 4945639 (Oct. 2, 2018)(emphasis added).
The instant case was filed before and pending as of the
applicable date of SSR 18-1p. As a result, SSR 18-1p is the
applicable regulation.[4]

Under SSR 18-1p, "if the ALJ needs to infer the date that
the claimant first met the statutory definition of disability,
he or she may call on the services of a[] [Medical Expert]."
Additionally, the decision regarding whether to call a Medical
Expert is within the ALJ's discretion and "the claimant nor his
or her representative can require an ALJ to call on the services
of an [Medical Expert] to assist in inferring the date that the
claimant first met the statutory definition of disability." SSR
18-01p.  In this case, the ALJ had the discretion to call for a

---

[4] The Court notes that plaintiff also made a fleeting argument related to SSR
82-59. Titles II & XVI: Failure to Follow Prescribed Treatment, SSR 82-59
(1982).  SSR 82-59 was rescinded on October 29, 2018.  That regulation,
however, applied to claims where an individual has a disabling impairment
which could be remedied by following a prescribed medical treatment.  If the
claimant has failed to utilize or follow such treatment, the claimant may be
precluded from being found disabled in some circumstances. That is not the
situation that was addressed in this case. Therefore, SSR 82-59 is not
applicable.  Plaintiff is conflating the ALJ's identification of a failure to
seek out medical care with the factors that SSR 82-59 requires to be met for
an ALJ to find that a claimant has not followed prescribed medical treatment.

Medical Expert to testify.  However, having found no severe
impairment at step two of the sequential evaluation process, and
having determined that plaintiff was not disabled as of the DLI,
there was no obligation imposed on the ALJ to call a Medical
Expert.  The ALJ did not commit error in failing to call for
testimony from a Medical Expert.

## II.  The ALJ did not err in failing to assign plaintiff an RFC.

Plaintiff argues that the ALJ erred by failing to assign
the plaintiff an RFC.  (Dkt. #16-1 at 7-8.)  Plaintiff asserts
that the RFC is a "required element of the sequential evaluation
process which renders the decision unreviewable by this Court."
(Id.)  The Commissioner, however, highlights that the ALJ did an
evaluation of the evidence in the record and determined that as
of the date last insured, plaintiff did not have any severe
impairments. (Dkt. #21-1 at 6.)  Therefore, the Commissioner
argues that no further steps needed be taken. (Id.)   The Court
agrees.

Plaintiff was found not to have a severe impairment at step
two of the sequential evaluation process.  "If at any step a
finding of disability or nondisability can be made, the SSA will
not review the claim further." Barnhart v. Thomas, 540 U.S. 20,
24 (2003).  In this matter, once the ALJ determined that there
was no severe impairment, a finding of not disabled was

11

required.  Therefore, as long as that decision is supported by substantial evidence, it was not an error for the ALJ to end the sequential evaluation process at that point.

As previously stated, substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258. If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

"As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997).  "'Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence . . . Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.'" Lillis v. Colvin, No. 3:16-cv-269(WIG), 2017 WL 784949, at *5 (D. Conn.

Mar. 1, 2017) (quoting Hanson v. Comm'r of Soc. Sec., No. 315-CV-0150GTS(WBC), 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016)).  Additionally, the ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

In evaluating whether the plaintiff had a medically determinable impairment or combination of impairments that was severe at step two of the sequential evaluation process, the ALJ identified the two-step process the ALJ needed to follow. First, the ALJ must determine if "there is an underlying medically determinable physical or mental impairment" that is identified through medically acceptable techniques which "could reasonably be expected to produce the [plaintiff's] pain or other symptoms." (R. 19.)  If so, the ALJ will then "evaluate the intensity, persistence and limiting effects of the [plaintiff's] symptoms to determine the extent to which they limit the [plaintiff's] functional limitations." (R. 19.)

In this case, the ALJ determined that the medically determinable impairments could potentially be expected to produce the alleged symptoms.  However, the ALJ determined that the plaintiff's allegations regarding intensity, persistence, and the limiting effects are not consistent with the record. (R. 20.)  In support of this determination, the ALJ highlighted that the claimant sought out minimal treatment for the conditions of

"Lyme disease, hypertension, and OSA prior to June 30, 2016" (R. 20.)  In looking at the back, knee, and shoulder, the ALJ noted treatment by Dr. Cambridge. (R. 20.)  However, the ALJ noted a lack of any restrictions placed on plaintiff by Dr. Cambridge. (R. 20.) Further, the ALJ noted that plaintiff asserted that he continued to work as a bridge painter until 2016. (R. 20.)

The ALJ also noted that the plaintiff had a two-year gap in his treatment records prior to his date last insured. (R. 20.) Additionally, while seeking treatment before the gap, the treatment was minimal for someone alleging severe and significant impairment.  (R. 20.)  The ALJ also identified that the medical opinions of three State Agency consultants found that there was insufficient evidence to establish disability before the date last insured. (R. 21.)  This fact seems of relatively high importance considering that it is the plaintiff's burden to provide evidence of disability prior to the date last insured.

Taken as a whole, the Court finds that the ALJ relied on substantial evidence to establish that the record was insufficient to establish a severe impairment prior to the date last insured.  As such, the failure to establish an RFC or continue the sequential evaluation process is not grounds for remand in this case.

### III. The ALJ properly evaluated Dr. Cambridge's opinion

The plaintiff argues that the ALJ erred in evaluating the medical opinion evidence provided by treating physician Dr. Cambridge.  Specifically, plaintiff argues that the ALJ erred in the application of 20 C.F.R. § 404.1520b(c), because the ALJ failed to discuss certain evidence that was seen as neither valuable nor persuasive. (Dkt. #16-1 at 9.)  Plaintiff argues that the ALJ should have applied 20 C.F.R. § 416.920c and articulated the supportability and consistency of Dr. Cambridge's opinion.  However, plaintiff's argument misses the mark.

The ALJ reviewed Dr. Cambridge's opinion in two paragraphs. (R. 22.)  The first paragraph discussed portions of the opinion dealing with assertions made by Dr. Cambridge that related to matters and determinations that are reserved for the Commissioner. The ALJ identified that Dr. Cambridge provided a medical opinion that contained information reserved for the Commissioner and that under the Code there was no requirement for that information to be evaluated as it is deemed to be of no value and unpersuasive. (R. 22.)  The Court agrees with this assertion.  A review of the letter from Dr. Cambridge indicates that he stated plaintiff was unable to work and should receive Social Security. (R. 1462-66.)  According to 20 C.F.R. §

15

1520b(c)[5] matters related to a claimant's ability to work or
entitlement to benefits are reserved for the Commissioner. *See*
20 C.F.R. § 1520b(c).   Therefore, there was no error by the ALJ
in concluding that those portions of Dr. Cambridge's opinion
regarding matters reserved for the Commissioner were not in need
of review or discussion.

Additionally, plaintiff's argument overlooks the fact that
the ALJ continued the analysis in the very next paragraph and
discussed the supportability and consistency of Dr. Cambridge's
opinion.   The ALJ found that the opinion was conclusory and
"unsupported by the medical evidence of record." (R. 22.)   The
ALJ noted that Dr. Cambridge did periodically treat the
plaintiff with knee injections from 2004 to 2014, however Dr.
Cambridge did not place any restrictions on plaintiff's activity
related to work. (R. 22.) Further, the ALJ returned to the issue
of the two-year gap in treatment before the date last insured.
(R. 22.) The implication being that the gap, as had been
discussed earlier in the ALJ's opinion, indicates less severity
than is indicated by Dr. Cambridge's opinion.   Again, the ALJ's
theory is that plaintiff would have been in greater need of

---

[5] To the extent that plaintiff is arguing that this section of the C.F.R. is
no longer applicable, and new regulations are in place, the Court believes
plaintiff is confusing this provision with the now rescinded "treating
physician rule" under 20 C.F.R. § 1527, which required an ALJ to "articulate
and explain the weight afforded to a treating source's medical opinion."
(Dkt. #16-1 at 9.)

treatment and unlikely not to seek out any available care if the symptoms were of such significant severity.  The ALJ also observed that Dr. Cambridge noted plaintiff's full-time work prior to 2014 and that he was too young and active for knee replacement in 2010. (R. 22.) Additionally, Dr. Cambridge pointed out that plaintiff was, based on office notes, continuing to work through at least June of 2014 as a bridge painter, which is noted to be "a very physically demanding job." (R. 1462.)  Upon review, the undersigned is satisfied that the ALJ has provided a sufficient review and analysis of Dr. Cambridge's opinion to satisfy the obligations set forth in 20 C.F.R. §416.920c.

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #16-1) is DENIED and the Commissioner's motion to affirm that decision (Dkt. #21-1) is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 30th day of September, 2022, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge